## PENNSYLVANIA RAILROAD COMPANY'S APPEAL.

One railroad company will not be enjoined from constructing its railroad upon another railroad company's land which is not in actual use.

The exercise of a later granted franchise will not be restrained unless its exercise will interfere with or obstruct the actual operation and exercise of the prior franchise.

The doctrine that an injunction will not be granted where the complainant has been guilty of *laches* applies with special force in a case where the construction of a public improvement is sought to be restrained.

A preliminary injunction to restrain the construction of a railroad will not be granted on the ground that it does not possess the franchise claimed where the facts are in dispute.

Appeal from the Common Pleas of Cambria County. In Equity. No. 239 July Term, 1882.

The Pennsylvania Railroad Company filed a bill in equity against the Somerset and Cambria Railroad Company, alleging that it had purchased from the State a branch of a canal running southeastwardly from Johnstown to a point on Stony Creek, three miles distant, known as the "Stony Creek Feeder." That defendant had trespassed upon said feeder, and was constructing a railroad thereon. The Pennsylvania Railroad Company claimed:

1. That the fee simple of the Stony Creek feeder was in the Pennsylvania Railroad Company.

2. That the Pennsylvania Railroad Company held the Stony Creek feeder, as well as the main line, with the grant from

the Commonwealth to hold, use and enjoy the same under the provisions of their act of incorporation and any supplements thereto, and with the privileges, restrictions, and conditions granted in the Act of 1857 in addition ; that it, therefore, had a prior grant ; that the defendant company, even if possessed of a franchise in Cambria County, did not have an express grant to appropriate this franchise of the plaintiff, and that any implication of such grant was rebutted by the fact that Johnstown could be reached as conveniently without appropriation of the feeder property ; *second*, by the fact that the Commonwealth held a yet unpaid mortgage upon the main line property, with the right to re-enter in the event of default.

3. That the defendant company had no franchise exercisable within the County of Cambria—

*First.*—Because the special franchise given to extend from Somerset to Johnstown had attached to it the condition that it should be null and void unless its construction was commenced within five years from its date, and such construction was not commenced until more than six years after.

*Second*—Because this special franchise was granted in August, 1873, and no business had been commenced in good faith thereunder at the time of the adoption of the new Constitution, and it was, therefore, invalid by virtue of Article XVI of the new constitution.

*Third.*—Because said special grant was not accepted by the Somerset and Mineral Point Railroad Company before the sale of its property and franchises as hereafter referred to.

*Fourth.*—Because this special grant to construct a railroad in Cambria County, originally given to the Somerset and Mineral Point Railroad Company, was not sold to, and purchased by, the Somerset and Cambria Railroad Company, which exists as purchaser of the former company. The sale was made, (a) under a mortgage given by the Somerset and Mineral Point Railroad Company before the special grant of 1873, and while the company had only authority to construct a railroad between Somerset and Mineral Point, in Somerset County, and not only could not have included subsequently

acquired franchises, but in fact did not include any franchise, but simply the property and profits (*b*) under an execution on a judgment in the Common Pleas of Somerset County, which execution not only did not have an endorsement on the writ extending the levy to property and franchises and rights in any other county than Somerset, but the levy was distinctly confined to the County of Somerset.

The ninth paragraph of plaintiff's bill was as follows:

9. The defendant claims to exist as a corporation. as evidenced by certificate filed and recorded in the office of the Secretary of the Commonwealth at Harrisburg on Monday, February 17th 1879, by virtue of an organization of the purchasers at judicial and trustee's sale of the corporate rights and franchises of the Somerset and Mineral Point Railroad Company, and consequently to be vested with the rights, powers, immunities, privileges, and franchises, and subject to all the restrictions existing and imposed upon said company. The said Somerset and Mineral Point Railroad Company, in its original act of incorporation, approved March 17th, 1868, was authorized to construct a railroad from a point in or near the Borough of Somerset, in the County of Somerset, by the nearest or best route, into or near Mineral Point. on Castleman's river, in said county, and connect with the Pittsburg and Connellsville Railroad, and to build branches not exceeding ten miles in length, with all the powers and subject to all the provisions of the act entitled "An act regulating railroad companies," approved February 19th, 1849, and was restricted in this wise, namely: "That the said company shall commence the construction of the road within five years from the passage of this act, and shall complete the same within ten years thereafter; *Provided*, That the completion of any five miles or more of said railroad shall be held as good for this act as as though the whole had been completed," and, pursuant to said act, constructed the road from Somerset to Mineral Poin , being a distance of nine and one-tenth miles, during the years 1870 and 1871. In a supplement to said act of incorporation, approved August 12th, 1873, the said Somerset and Mineral

Point Railroad Company was authorized to extend its road from Somerset to Johnstown, being a distance of about thirty miles, with the same privileges and restrictions contained in their act of incorporation and several supplements thereto— that is to say, the duty was open them, if they wished to avail themselves of the power to build the extension authorized by this supplement, to commence the construction of the road within five years from the passage of the act of August 12th, 1873. . The plaintiff avers that the said company did not commence the construction of any part of said extension for a period of more than five years after the passage of said act, and that such failure works a forfeiture of the grant.

That the Somerset and Mineral Point Railroad Company being authorized to build a road between specific points, and having completed such road, the subsequent supplement of 1873, authorizing it to extend its road to Johnstown, was a special grant; that no business by virtue of said grant was commenced in good faith thereunder before the first Monday of January, 1874; and that, therefore, the said grant became invalid by virtue of the provisions of section first of aiticle sixteenth of the new constitution.

That the aforesaid certificate of organization of the Somer. set and Cambria Railroad Company sets out that the organization is made by purchasers at sales of the property and franchises of the Somerset and Mineral Point Railroad Company; (a) a sale was held at the court house in the Borough of Somerset, on the 2d of January, by the Sheriff of Somerset County, pursuant to a writ of *fieri facias* issuing out of the Court of Common Pleas of said County, on a judgment obtained in said Court by Geo. F. Baer against the Somerset and Mineral Point Railroad Company; and (b) a sale made at the same time and place by Isaac Kauffman, trustee in a mortgage made by the Somerset and Mineral Point Railroad Company, bearing date the 3rd of June, 1871, recorded in said county in mortgage book, vol. 3, page 49.

Plaintiff charges that the levy made by said Sheriff, under said writ of *fieri facias*, was in the following words:—

"Upon all the right, title, interest and claim of the Somerset and Mineral Point Railroad Company of, in and to the

Somerset and Mineral Point Railroad, in Somerset County, Pa., and upon all the property, real, personal and mixed, including locomotives, cars, hand-cars, tools, engine-houses, depot, water-station, siding, and switches now in the regular use of said railroad company in the conducting of its business as a carrier, and the rights, franchises, privileges and rights of way of said company, incident, appurtenant, or in anywise appertaining or connected therewith, December 16th, 1878."

That the return of sale made by said Sheriff, upon said levy, was as follows:—

"January 2d, 1879. All the right, title, interest and claim of the Somerset and Mineral Point Railroad Company of, in, and to the Somerset and Mineral Point Railroad, in Somerset County and State of Pennsylvania, and all property, real, personal and mixed, including locomotives, cars, hand-cars, tools, engine-houses, depot, water-station, siding, and switches, as held by the said Somerset and Mineral Point Railroad Company in the conducting of its business as a carrier, and all the rights, franchises, privileges, and rights of way of said company, incident and appurtenant, or in anywise appertaining or connected therewith, sold to Christian Long for the sum of $20.00, of which $18.25 was applied to costs, Sheriff for all costs but attorney fee."

That the said levy was not extended, by endorsement on said writ, or otherwise, to the property, franchises and rights of said corporation, in any other county than the County of Somerset.

That the said mortgage of 3rd of June, 1871, only covered and included "all the present and future to be acquired property of the said Somerset and Mineral Point Railroad Company—that is to say, the road made or to be made, including the right of way to the land occupied thereby, together with the superstructure, tracks thereof, and all the rails or other materials used thereon or procured therefor, and all bridges, viaducts, culverts, fences, depots, grounds, and buildings thereon, and all the engines, tenders, cars, tools, machinery, and materials, contracts, and all other real and personal property of whatsoever kind, nature or description, together with

the tolls, rents, or incomes to be had or levied therefrom, wherever situated, and whether the same be income resulting trom leasing the said road for a term of years or otherwise * * * with the appurtenances;" and that the sale in foreclosure of said mortgage was made by the trustee therein under the power contained in said mortgage, and not by virtue of decree of Court.

Plaintiff charges that neither said judicial sale, nor the sale made under said mortgage, passed the franchise, if existing in Somerset and Mineral Point Railroad Company, under the supplement to its charter of August 12th, 1873, to construct a railroad in the County of Cambria, or to exercise the power of eminent domain in said County of Cambria, upon the property of plaintiff, as stated in the second and third paragraphs of this bill. Said supplement was not accepted or work done under it before said sale.

---

The defendant answered all of the bill except the 9th paragraph, and demurred to that paragraph as follows:

The defendant by protestation, not confessing or acknowledging all or any of the matters and things in the said complainant's bill to be true, in such manner and form as the same are therein set forth and alleged, as to so much and such part of said bill as is contained in the ninth paragraph thereof, doth demur, and for cause of demurrer showeth,

*First.*—That the subject-matter of said ninth paragraph is not cognizable by this Honorable Court at the suit of said complainant.

*Second.*—That it appears, in and by said ninth paragraph, that this defendant, in doing the acts complained of, is acting under and by virtue of a formal and legal organization as a corporation in pursuance of the laws of this Commonwealth, and that complainant seeks to inquire into the regularity and legality of said organization, and to enforce a forfeiture of the rights, powers and privileges possessed by this defendant under said organization, whereas it is not competent for this honorable Court to entertain said inquiry, or to adjudge said forfeiture at the suit of said complainant; wherefore and for

divers other good causes of demurrer appearing in the said ninth paragraph of said bill of complaint, doth demur to the said ninth paragraph thereof, and to all the matters and things therein contained, and prays the judgment of this honorable Court whether said defendant shall be compelled to make any further or other answer to the said ninth paragraph of said bill so demurred to as aforesaid; and prays that the said bill, as to said ninth paragraph thereof, be dismissed at the cost of said complainant.

---

Affidavits were filed and various items of record evidence presented; but the Court on December 16th, 1880, made absolute a rule to dissolve the preliminary injunction previously granted, in the following opinion, per

DEAN, P. J.:

The Pennsylvania Railroad Company (complainant), under the act of May 16th, 1857, P. L. 519, entitled "An act for the sale of the Main Line of the Public Works," purchased, with the other portions of said main line, the canal from Johnstown to Pittsburg, "with all the property thereto appertaining or in anywise connected therewith." The *locus in quo* of the alleged trepass is the bed of an old feeder of the canal, cal'ed Stony Creek feeder, extending for a distance of about one and three-quarter miles north of, and connecting with the canal at Johnstown. By the resolution of the Canal Board, July 6th, 1830, and subsequent action of the Commonwealth's officers, the feeder was determined on, and the land necessary to its construction and use appropriated. It was intended to increase the quantity of water in the canal, and for this purpose was kept up during the ownership of the main line by the Commonwealth. Under the authority given in the act directing the sale, the complainant, by formal resolution of the 25th of February, 1863, directed the abandonment on the 1st of May following of so much of the western division of said main line as lay between Johnstown and Blairsville, together with such dams, feeders and reservoirs as pertain to or are used in connection with said western division." The abandonment, not later than 1863, was complete—the water was let out of the

canal, dams, and feeders; and thereafter the locks, aqueducts and waste weirs were either taken down or fell into decay and tumbled down; the bed of the canal and feeder was in some instances occupied by adjoining owners for building purposes, and in others was enclosed and cultivated. The railroad company, by three separate deeds, two dated January 24th, 1866, and one March 28th, 1877, conveyed the land which formed the bed of the canal and basin at Johnstown, as well as a portion of the feeder next to the canal, to the Cambria Iron Company, a manufacturing corporation at Johnstown, leaving the remainder of the Stony Creek feeder, still claimed by it, three-fourths of a mile from the former main line of the canal, and the same distance from its own railroad. That is, the conveyance to the Cambria Iron Company of the intervening land completely cuts off what is left of the feeder from its old connection. On this piece or portion of the feeder the alleged trespass was committed by respondent and a preliminary injunction is prayed for.

The Somerset and Cambria Railroad Company claims, by certificate put in evidence, to be a corporation under the laws of this Commonwealth, authorized to lay out and construct a railway for passenger and freight traffic, between Somerset in Somerset County and Johnstown in Cambria County. In constructing its roadway between these points, it has at two places crossed the before-mentioned piece of the bed of the Stony Creek feeder, and for some distance has made its embankments and laid its rails so near the bed that it is, practically, occupied by the railroad. The respondent, admitting its liability to make compensation in damages to the owner or owners of the land, nevertheless claims the right under its charter to occupy said land for the purposes of a railroad. Some evidence tending to show a conditional occupancy of the land by the Commonwealth, when the feeder was first constructed, has been offered, but it is meagre in quantity and indefinite in character. So far as this branch of the case is concerned, the averment of ownership in the third paragraph of complainant's bill, fortified by the records and proceedings of the Canal Board, established, at least at this stage of the proceedings on the evidence now before us, the ownership of

the land in the Pennsylvania Railroad Company. The estate taken by the company under its purchase in 1857 is an absolute estate, which does not revert on abandonment to the former owner ; Robinson vs. Western Penna. R. R. Co., 22 P. F. Smith, 316.

The complainant further avers that, under the Act of 1857, it became the purchaser of the canal as a common carrier corporation, and the right to use all the land thus purchased for the purposes of a common carrier vested in it, and remains with it.

The eleventh section of the Act of 1857 provides that "should any company already incorporated by this Common- "wealth become the purchaser of said main line, they shall "possess, hold and use the same under the provisions of their "act of incorporation and any supplements thereto, modified, "however, so as to embrace all the privileges, restrictions and "conditions granted by this act in addition thereto."

Thus, as is alleged, having by the fact of its purchase acquired an absolute estate in the land, by the further fact of its existence as a corporation under the laws of this Commonwealth at the time of the purchase, it acquired the right, under this section, "to possess, hold, and use" the land for such purposes as are authorized by its charter and the supplements thereto, thus investing the complainant with a prior grant of the land for railroad purposes. This grant, first in point of time, it is alleged is interfered with or is sought to be appropriated by respondent under its later grant, which it is claimed can not be permitted and should be immediately be restrained, as the second grant does not expressly authorize such appropriation, nor do the terms of the grant warrant the implication of such authority.

It is settled beyond dispute by a long course of decisions, that no grant of a second franchise will be *presumed* to give the right to interfere with or appropriate a franchise already granted ; but in the long list of cases in which this rule has been applied, the exercise of the later granted franchise did in fact either interfere with or obstruct the exercise of the first, or that would have been the inevitable consequence if

permitted to be exercised. As examples, take the cases cited by complainant's counsel. In Packer vs. the Railroad Company, 7 Harris, 211, one company sought to build its road on the same route adopted by another. In Commonwealth vs. Erie & N. E. R. R. Co., 3 Casey, 339, the complainant averred the railroad company was about to build its railroad upon the public streets of the City of Erie, and thereby obstruct travel. In Case vs. P. & E. R. R. Co., 6 Norris, 307, the company appropriated a public alley in the Borough of Sunbury. And so, in every case I have examined, where the rule is applied, there was a substantial interference with the first grant, or one threatened. The undisputed evidence shows here that the whole of the bed of the feeder not already sold had been cut off or detached from the main line by the conveyance of the intervening land to the Cambria Iron Company; it has no connection with the railroad operated by complainant for canal purposes; the whole feeder was formally and completely abandoned seventeen years ago; no use has been made of it since by complainant, nor does it allege that its use for any of the purposes of transportation is contemplated in the near future; such part as was not sold, the part entered upon by respondent has for many years been occupied by the adjoining land-owners. In point of fact, the complainant, however indisputable may be its title to the land, does not, within any reasonable meaning of the eleventh section of the Act of 1857, "possess, hold, use" this particular portion of its purchase in 1857 for any of the purposes of a common carrier under its charter. Whether the rule referred to shall be successfully invoked when the time comes for final decree, I now express no opinion, but only say here, that I hesitate to apply it now to an entirely different state of facts than has heretofore called for its application, when the effect would be a sweeping, and, to the respondent, a disastrous preliminary injunction.

But, further, not only is there no actual interference with the business of complainant by respondent under its charter, but the complaint is tardily made. The respondent organized and commenced the construction of this road between Somerset and Johnstown more than one year ago—mades its surveys

constructed its embankments and bridges in the meantime; had its rails actually laid on the disputed land; had expended $700,000 on the entire route, when this bill was filed and this preliminary injunction awarded.

It is held that—

"Parties, who possessing full knowledge of their rights have "lain by, and by their conduct have encouraged others to "expend moneys in contravention of the rights for which they "contend, cannot call upon the Court for its summary inter- "ference. The principle applies with peculiar force * * * "where the act complained of is by a public company, in the "execution and construction of their works;" Kerr on Injunctions, 202.

While, so far as is shown, there may have been no such delay as would prejudice the rights of complainant at final hearing, there has been such delay and passive acquiescence in the act complained of as will cause the Court to withhold a preliminary injunction; especially as the injury is no greater now to complainant than it was six months ago, or than it will be six months hence.

"In determining a bill upon interlocutory application, the "Court does not conclude a right, but merely refuses, in the "exercise of its discretion, to interfere summarily in favor of a "party who has not shown due diligence in making his appli- "cation;" Kerr on Injunctions, 206.

Therefore, being of opinion that there has been no such interference with or appropriation of the prior franchise of complainant as calls for the prompt action of a Court of Equity, by preliminary injunction, to prevent irreparable damage, and that such action would probably cause respondent great damage; and further being of opinion that in so far as the legal rights of complainant have been infringed, the complaint should have been promptly made before respondent had incurred a large expenditure of money without notice of complainant's intention to assert its right; there remain for consideration the averments, 1st, that the franchise of respondent has been forfeited; 2nd, that it possesses no franchise which

authorizes it to construct a railroad within the County of Cambria.

The jurisdiction of this Court to inquire into these averments is at least doubtful, but as such consideration would necessarily involve an inquiry into and the ascertainment of the truth from disputed facts, they cannot be passed upon at this stage of the proceedings.

It is a settled rule of equity jurisprudence that the Court will not, on a hearing for a preliminary injunction, pass upon conflicting evidence as to facts, but will defer its decision until final hearing in the cause.

And now, December 16th, 1880, it is ordered that this rule be made absolute, and the preliminary injunction heretofore awarded be dissolved, on respondent giving bond with at least two good sureties, in the sum of $5,000, conditioned for payment to complainant of any damages sustained by it, &c., as required by law, &c. Said bond and sureties to be approved in vacation by an Associate Judge of the Court of Common Pleas of Cambria County.

----

The Pennsylvania Railroad Company then appealed, complaining of the dissolution of the injunction.

*R. L. Johnston and James A. Logan, Esqs.*, for appellant, argued that the Pennsylvania Railroad was not only the owner of the fee of the soil, but also had the franchise to exercise the franchises of a public highway; Act May 16th, 1857, P. L. 525, Section 11. Such a franchise can not be violated except by direct legislative grant; Pennsylvania R. R. Co.'s Appeal, 37 L. Int., 125; 93 Pa., 150; Springfield vs. Connecticut River R. R. Co., 4 Cushing, 63; Bridgeport vs. New York and New Haven R. R. Co., 36 Conn., 255; Commonwealth vs. P. & C. R. R. Co., 24 Pa., 159. The defendant does not at this point possess the right of eminent domain; and it is proper to show that the corporation does not possess the power claimed; Shipley vs. Continental Pass. Ry. Co., 13 Phila., 128; Act of August 12, 1873, P. L. 1874, page 432; Act June 19, 1871, P. L. 1361; Edgewood Railroad Company's Appeal, 79 Pa., 257; Constitution of 1874, Article XVI, Sect.

3 Wa 30

1. The Act of August 12, 1873 was not accepted; Curry vs. Scott, 54 Pa., 277. When the mortgage was executed the company did not have the right to build to Johnstown, and, consequently, the purchaser upon the foreclosure sale upon that mortgage got no greater right; Jones on Railroad Securities, Sect. 104; Chartiers Valley R. R. Co. vs. Hodgens, 85 Pa., 501; Canal Co. vs. Bonham, 9 W. & S., 27; Randolph vs. R. R. Co. 11 Phila., 502; Wood vs. Railroad Co., 8 Phila., 94; Commonwealth vs. Erie R. R. Co., 27 Pa., 339.

*Messrs. George Shiras, W. McCullough and John P. Linton, Esqs., contra,* cited Pillsworth vs. Hopton, 6 Vesey, 51; Storm vs. Mann, 4 Johnson's Ch., 21; Lehigh Bridge Co. vs. Coal Co., 4 R., 9; President vs. McConaby, 16 S. & R., 142; Irvine vs. Lumberman's Bank, 2 W. & S., 190; Act of May 15, 1874, P. Laws, 188, was accepted by the appellee.

The Supreme Court affirmed the decree of the Common Pleas on February 28th, 1881, in the following opinion,

PER CURIAM:

Without giving any opinion on the merits of the controversy, we are of opinion that the refusal of the preliminary injunction in this case was the proper exercise of the sound discretion of the Court below.

> Decree affirmed and appeal dismissed at the costs of the appellants.